**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DAMON SAULBERRY, | : | |
| a/k/a Damon Saulsberry, | : | |
| a/k/a Damin Saulsberry, | : | |
| | : | Civil Action No. 10-1004 (JBS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ATLANTIC COUNTY JAIL, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Damon Saulberry
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, NJ  08330

**SIMANDLE**, District Judge

        Plaintiff Damon Saulberry, a prisoner confined at the
Atlantic County Justice Facility in Mays Landing, New Jersey,
seeks to bring this action in forma pauperis pursuant to 42
U.S.C. § 1983, alleging violations of his constitutional rights.
Based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. §1915(g), the Court will
grant Plaintiff's application to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court
to file the Complaint.

        At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on July 8, 2009, in Atlantic City, Atlantic City Police Officers Calabrese and Lane dragged Plaintiff into an alley where they kicked and punched Plaintiff, causing injuries.  Plaintiff alleges further that Officer John Doe came upon the scene and joined in beating Plaintiff. Plaintiff alleges further that Sgt. Jake Doe came upon the scene and laughed and watched the beating, but made no effort to stop it.  Plaintiff alleges further that K-9 Officer Rando came upon the scene and ordered his dog to bite Plaintiff, who was already handcuffed and being beaten by officers.  Plaintiff alleges that he suffered injuries serious enough to require a visit to the hospital and stitches.  Plaintiff asserts that the officers filed false charges to cover their actions.

Plaintiff alleges that on December 19, 2009, Officer Pali of the Atlantic City Police Department handcuffed Plaintiff then choked, kicked, and punched him while trying to get Plaintiff's mouth open.  Plaintiff alleges that Officer John Doe joined Officer Pali in "assaulting" Plaintiff while Plaintiff was on the

ground, handcuffed.  Plaintiff alleges that Officer Pali made up "bogus" charges against Plaintiff.

Plaintiff alleges that on January 5, 2010, Officer M. Pincus of the Atlantic City Police Department responded to an altercation between Plaintiff and two other persons, then counselled the two other persons to bring a robbery charge against Plaintiff.  Officer Pincus refused to permit Plaintiff to file assault charges against the two other persons involved in the altercation.  Plaintiff alleges that Officer Pincus then brought robbery charges against Plaintiff.

Plaintiff names as defendants all of the officers named above, as well as the Atlantic City Police Department and Chief Mooney, who he alleges has failed to properly train his police officers.

With respect to the Atlantic County Jail, Plaintiff alleges that on July 8, 2009, Warden Sean Thomas approved housing Plaintiff on a "stack-a-bunk" on the floor, while Plaintiff's injuries, including stitches and bandages on his legs, warranted putting him in an elevated position.  Plaintiff also alleges that on July 9, 2009, Captain Cohen sent junior officers to harass and use physical force to confiscate the second "stack-a-bunk" that Plaintiff used to elevate his injured leg while sleeping on the floor.  Plaintiff names as defendants with respect to these

events Atlantic County Jail, Warden Sean Thomas, and Captain Cohen.

Plaintiff alleges that on January 5, 2010, Warden Thomas put Plaintiff's health at risk by housing him in unsanitary conditions in a cell with two other inmates who had not been medically cleared and sleeping 21 inches from the toilet and sink.  Plaintiff does not state how long he was in that cell. Plaintiff states that as of February 15, 2010, he was still sharing a two-inmate cell with two other inmates, for a total of three inmates in the cell.  Plaintiff alleges that the warden refuses to give him access to the law library, feeds him "small portions of watery food," and charges him $50 per month.

Plaintiff alleges that he filed a grievance, and that Lt. Steve Illiucci of the Atlantic County Jail, in retaliation for the grievance, went into Plaintiff's intake property and illegally confiscated a $100 bill, which he never entered on Plaintiff's property books.  Plaintiff alleges that on February 3, 2010, Lt. Illiucci interviewed Plaintiff and then attempted to "blackmail" Plaintiff to drop the grievance or he would file a disciplinary charge for having cash in his intake property. Plaintiff alleges that Lt. Illiucci then filed a retaliatory disciplinary charge and caused the $100 to be officially seized. Plaintiff alleges that Sgt. Kelcie interviewed him on January 26,

2010, and also threatened Plaintiff that if the grievance went forward there would be consequences against Plaintiff.

Plaintiff alleges that in late January or early February, 2010, Sgt. Iris of the Atlantic County Jail directed officers to harass Plaintiff and his cellmates by throwing Plaintiff's mat on the floor, knocking over food, stripping beds, etc.  Plaintiff alleges that, pursuant to these orders, Officer Bohm and Officer John Doe "trashed" Plaintiff's cell.  All of these officers, as well as the Atlantic County Jail, are named as defendants.

Plaintiff seeks monetary damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim

6

requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

<u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ... If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

### IV.   ANALYSIS

A.   Joinder

Plaintiff has alleged here claims relating to three separate

arrests by Atlantic City Police officers and claims related to

events occurring after those arrests in the Atlantic County Jail. These claims are not properly joined in one action.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>       (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>       (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

11

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v. Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Here, the claims arising out of the arrests are completely unrelated, factually and legally, from the claims arising out of conditions at the jail.  Accordingly, this Court will dismiss without prejudice all claims arising out of conditions at the jail.[1]

---

[1] Should Plaintiff wish to proceed with these claims, he must file a new and separate complaint, accompanied by either the $350 filing fee or a new application for leave to proceed <u>in forma pauperis</u>.  This Court makes no representation as to whether these allegations state a claim sufficient to survive preliminary screening pursuant to 28 U.S.C. §§ 1915 or 1915A, or 42 U.S.C. § 1997e.

B.   Supervisory/Municipal Liability Claims

Plaintiff names as defendants in the excessive force claims the Atlantic City Police Department and Chief Mooney.  Plaintiff alleges that these defendants are liable because they are "responsible" for the actions of the officers and because Chief Mooney allegedly failed to properly train and supervise the officers involved in the arrests.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,

13

1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990), <u>quoted in</u> <u>Blanche Rd. Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 269 n.16 (3d Cir.), <u>cert. denied</u>, 516 U.S. 915 (1995), and <u>quoted in</u> <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. <u>Monell</u>, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [<u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of

the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Plaintiff has alleged no facts suggesting that the

circumstances of his arrests were the result of a policy or

acquiescence in a custom of constitutional violations.

Accordingly, there is no basis for municipal liability.

Nor has Plaintiff alleged any facts sufficient to state a

claim for failure to properly train or supervise the officers.

Where a need for "more or different training ... is so

obvious, and the inadequacy so likely to result in constitutional

violations, that the failure to train ... can fairly be said to

represent official policy," City of Canton v. Harris, 489 U.S.

378, 390 (1989), and that failure to train "actually causes

injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of supervisory

liability,

the focus must be on adequacy of the training program
in relation to the tasks the particular officers must
perform.  That a particular officer may be
unsatisfactorily trained will not alone suffice to
fasten liability on the [supervisor], for the officer's
shortcomings may have resulted from factors other than
a faulty training program.  ...  Neither will it
suffice to prove that an injury or accident could have
been avoided if an officer had had better or more

15

training ... .  Moreover, for liability to attach ...
the identified deficiency in a city's training program
must be closely related to the ultimate injury.

Id. at 390-91.  Plaintiff alleges nothing more than that certain
police officers caused him injury, plainly an insufficient
allegation upon which to base liability for failure to train.
The three arrests that Plaintiff describes took place within a
period of six months; two of these arrests allegedly involved
excessive force, all of them allegedly involved police officers
bringing false charges.  Plaintiff has alleged no facts
suggesting that Chief Mooney was aware of the facts surrounding
the arrests or that they represent a widespread pattern of
behavior.  The claim for failure to train and/or supervise must
be dismissed with prejudice.

C.   Excessive Force in Arrest Claims

Plaintiff alleges that, on two separate occasions, he was
beaten while being arrested.

The Fourth Amendment to the United States Constitution
provides that "The right of the people to be secure in their
persons ... against unreasonable searches and seizures, shall not
be violated."

"To state a claim for excessive force as an unreasonable
seizure under the Fourth Amendment, a plaintiff must show that a
'seizure' occurred and that it was unreasonable."  Brower v.
County of Inyo, 489 U.S. 593, 599 (1989), quoted in Abraham v.

16

Raso, 183 F.3d 279, 288 (3d Cir. 1999).  See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor, 490 U.S. 386, 396 (1989).  Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396; quoted in Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

17

Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

A police officer may be liable under section 1983 if the officer fails to intervene and take reasonable steps when an individual is subjected to excessive force at the hands of another officer, even if that officer is a superior. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (other citations omitted)). However, the officer must have a "realistic and reasonable opportunity to intervene." Id. at 651 (citing Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene)); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putnam v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981) (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Plaintiff's claims for excessive force in arrest are sufficient to proceed as against the following defendants: Officer Rando, Officer Calabrese, Officer Lane, Officer Pali, Officer John Doe, and Sgt. Jake Doe, all of whom are alleged to

be employed by the Atlantic City Police Department.  As Plaintiff has made no factual allegations against Officer Jane Doe, all claims against her will be dismissed with prejudice.

D.   <u>Malicious Prosecution Claims</u>

Plaintiff alleges that "bogus" charges were brought against him as a result of the incidents surrounding the arrest and in an effort to cover up the beatings.  The Court construes these allegations as an attempt to state a claim for malicious prosecution.

In order to state a <u>prima facie</u> case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998); <u>Luthe v. Cape May</u>, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was

"'some deprivation of liberty consistent with the concept of seizure.'"  Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994).

Here, Plaintiff fails to allege sufficient facts to state a claim under elements (3) and (4), above.  He fails to allege what charges were brought against him, precluding this Court from evaluating whether there was probable cause for the charges, or whether the state trial courts determined that there was probable cause for the charges, and he fails to allege a favorable termination.  Accordingly, these claims will be dismissed without prejudice.

In addition, to the extent Plaintiff is attempting to state a claim for false arrest, he also fails to state a claim.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Ramirez v. United States, 998 F. Supp. 425, 434

20

(D.N.J. 1998) (quoting <u>Fleming v. United Postal Service, Inc.</u>, 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (quoting <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964)); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817 (3d Cir. 1997).

Once again, Plaintiff has failed to assert the alleged basis for his arrest.  With respect to one of the arrests, for example, he states that the officer was attempting to open Plaintiff's

21

mouth to determine whether he had any drugs.  Without any more information about the reason for the officer's attempt to arrest on a drug charge, or the nature of the charges actually levelled against Plaintiff, it is not possible to determine whether the arrests, or any of them, were made without probable cause. Moreover, with respect to the most recent arrest, it appears that Plaintiff remains confined pursuant to the charges resulting from that arrest.  Plaintiff has failed to allege whether there were any state court determinations of probable cause with respect to any of the arrests.  For all of these reasons, Plaintiff also has failed to state a claim for false arrest.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the excessive force claim will be permitted to proceed.  All other claims will be dismissed.  Because it is conceivable that Plaintiff may be able to allege additional facts to overcome deficiencies noted above, he will be permitted to file an amended complaint.[2]  An appropriate order follows.


  s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated:  **September 24, 2010**

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>